OPINION
{¶ 1} Defendant-appellant, Jack M. Raymond, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of multiple offenses. Because (1) the trial court did not err in determining defendant to be a repeat violent offender, and (2) sufficient evidence and the manifest weight of the evidence support defendant's convictions, we affirm. *Page 2 
 {¶ 2} On May 28, 2007 between about 4:00 p.m. and 5:00 p.m., John Ross was abducted and robbed at gunpoint as he left his employment en route to explore a possible job opportunity. By indictment filed June 20, 2007, defendant was charged, as a result of the incident, with aggravated robbery in violation of R.C. 2911.01, robbery in violation of R.C. 2911.02 as a second-degree felony, kidnapping in violation of R.C. 2905.01, and felonious assault in violation of R.C. 2903.11. Each count alleged both a firearm specification in violation of R.C. 2941.145 and a repeat violent offender specification pursuant to R.C. 2941.149. In addition, defendant was charged with robbery in violation of R.C. 2911.02 a third-degree felony, and intimidation of a crime victim or witness in violation of R.C. 2921.04, each with a firearm specification. Finally, the indictment charged defendant with one count of having a weapon while under disability in violation of R.C. 2923.13.
 {¶ 3} Defendant entered a not guilty plea to all counts on June 22, 2007; on September 26, 2007, he filed a notice of alibi. The state dismissed the felonious assault count, and the trial court dismissed the repeat violent offender specification to the second-degree felony robbery charge. Except for the weapon under disability charge, the remaining counts of the indictment were tried to a jury; the weapon under disability count, with the repeat violent offender specifications, was tried to the court. The jury returned a guilty verdict on all counts submitted to it; the trial court found defendant guilty of the weapon under disability charge, as well as the repeat violent offender specifications to the kidnapping and aggravated robbery charges. The trial court sentenced defendant accordingly. *Page 3 
 {¶ 4} Defendant appeals pursuant to a granted motion for leave to appeal, assigning two errors:
 First Assignment of Error
 The trial court erred by finding Appellant guilty of a repeat violent offender specification when the State failed to introduce sufficient evidence to prove that Appellant had previously been convicted of an offense of violence.
 Second Assignment of Error
 Appellant's convictions are against the manifest weight of the evidence.
I. First Assignment of Error {¶ 5} Defendant's first assignment of error asserts the state presented insufficient evidence of a prior conviction to support defendant's convictions under the repeat violent offender specification and the having a weapon while under disability charge. Although the state presented a time-stamped, certified copy of an entry purporting to sentence defendant for robbery in violation of R.C. 2911.02, defendant contends the copy fails to meet the state's burden of proof because it is unsigned.
 {¶ 6} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. *Page 4 
 {¶ 7} Pursuant to R.C. 2929.01(DD), a repeat violent offender is a person who, as relevant here, (1) is being sentenced for committing or for complicity in committing any felony of the first or second degree that is an offense of violence, or an attempt to commit any of those offenses, and (2) previously was convicted of or pleaded guilty to an offense of violence, or an attempt to commit such an offense, and the offense is a first or second-degree felony. The trial court is charged with determining whether an offender is a repeat violent offender, but a trial court's determination that an offender is "a repeat violent offender is precluded unless the indictment specifies that the offender is a repeat violent offender." R.C. 2941.149(A) and (B).
 {¶ 8} Here, the parties do not dispute that (1) defendant was being sentenced for aggravated robbery and kidnapping, first-degree felonies that are offenses of violence, (2) the indictment charged defendant with being a repeat violent offender because he was convicted in 1979 of a second-degree felony, robbery, in violation of R.C. 2911.02, an offense of violence, and (3) both the offense for which defendant was being sentenced, as well as the underlying prior conviction charged in the indictment, meet the statutory terms for finding defendant to be a repeat offender. Instead, the dispute centers on whether the state's proof of defendant's 1979 conviction alleged in the indictment is sufficient when the certified entry the state submitted and the trial court admitted over objection lacks the judge's signature.
 {¶ 9} The same issue arises under defendant's conviction for having a weapon while under disability. R.C. 2923.13 precludes a person from acquiring, having, carrying, or using any firearm or dangerous ordnance if the person has been convicted of any felony offense of violence. R.C. 2923.13(A)(2). Again, defendant does not contend that *Page 5 
the prior conviction alleged in the indictment is not an offense of violence; he contends the state failed to prove it with sufficient evidence because the judge did not sign the entry the state submitted as proof of defendant's 1979 conviction.
A. Proof of a prior conviction under R.C. 2945.75(C)
 {¶ 10} "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment of such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such conviction." R.C. 2945.75(B)(1). Crim. R. 32(C) defines a "judgment," specifying that "[a] judgment of conviction shall set forth the plea, the verdict or findings, and the sentence. * * * The judgeshall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk." (Emphasis added.)
 {¶ 11} For purposes of proving a prior conviction pursuant to R.C. 2945.75(B)(1), the "certified copy of the entry of judgment" of a prior conviction must be a correct "judgment of conviction" as defined in Crim. R. 32(C), including the rule's requirement that "the judge shall sign the judgment." See State v. Henderson (1979), 58 Ohio St.2d 171, paragraph two of the syllabus, and 177-179 (holding that "to constitute a prior conviction for a theft offense, there must be a judgment of conviction, as defined in Crim. R. 32[C], for the prior offense");State v. Baker, 119 Ohio St.3d 197, 2008-Ohio-3330, syllabus (explaining Crim. R. 32[C] and holding "[a] judgment of conviction is a final appealable order under R.C. 2505.02 when it sets forth * * * the signature of the judge"); State v. Anderson, Cuyahoga App. No. 87136,2006-Ohio-3905 (finding a judgment of conviction the judge did not sign not to be a final appealable order); State v. Brock, Hamilton App. *Page 6 
No. C-020819, 2003-Ohio-3199 (finding no "conviction" and no final appealable order where a magistrate, who presided over bench trial, signed the judgment). The unsigned entry the state submitted into evidence is not a judgment of conviction as defined in Crim. R. 32(C) because the judge who presided over the case did not sign it.
 {¶ 12} A "judgment" that complies with the requirements of Crim. R. 32(C) is not the only manner of establishing the offender's prior conviction pursuant to R.C. 2945.75. See, generally, State v.Raymond (Nov. 9, 1989), Franklin App. No. 89AP-356 ("Raymond I"). The plain language of the statute allows, but does not require, the use of a "certified copy of the entry of judgment" to prove a prior conviction.State v. Ward (1999), 130 Ohio App.3d 551, 559 (stating that "[a] certified copy of a judgment entry of a prior conviction is not the exclusive method to prove a prior conviction"); State v. Chaney (1998),128 Ohio App.3d 100, 105 (noting the statute "sets forth one way, but not the exclusive way, of proving prior convictions"); State v.Frambach (1992), 81 Ohio App.3d 834, 843 (observing that "R.C. 2945.75[B] sanctions merely one means of proving a prior conviction but not the only one"); State v. Cotton (July 14, 1994), Cuyahoga App. No. 64361, citing State v. Adams (1988), 37 Ohio St.3d 295 (concluding defendant's stipulation to fact of prior conviction is sufficient to sustain the enhancement of his sentence).
 {¶ 13} The issue then is whether, absent a valid judgment of conviction for the 1979 offense, sufficient other evidence exists to establish the fact of defendant's 1979 conviction for an offense of violence. Admissible evidence in this case includes the testimony of Rita Schmidt, a fingerprint technician with the Columbus Division of Police. She brought with her to trial the arrest report establishing Jack Raymond was arrested on *Page 7 
January 8, 1979; the report, admitted as State's Exhibit 19 without objection, included his fingerprints. The witness then took fingerprints from the defendant in the courtroom, compared the fingerprints, and concluded the fingerprints of defendant sitting in the courtroom were those of the same man arrested, fingerprinted, and identified in State's Exhibit 19. The arrest report supports State's Exhibit 18, the 1979 indictment in Franklin County Common Pleas Court case No. 79CR-01-72B that charged defendant with the robbery of a Stop-N-Go store in Franklin County on January 8, 1979. Nonetheless, absent the judgment of conviction the prosecution proffered, none of the other evidence the state offered was sufficient to establish defendant's conviction for the offenses charged in the 1979 indictment and supported in the arrest report.
 {¶ 14} In response, the state contends that, even if the unsigned judgment entry is insufficient to prove defendant's prior conviction, this court may take judicial notice of defendant's 1979 conviction addressed in our 1989 opinion rendered in Raymond I, supra.
B. Proof of a prior conviction through judicial notice
 {¶ 15} "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." Morgan v. Eads,104 Ohio St.3d 142, 2004-Ohio-6110, at ¶ 13, citing State v. Ishmail (1978),54 Ohio St.2d 402, at paragraph one of the syllabus. A court, however, may take judicial notice of adjudicative facts pursuant to Evid. R. 201. According to the rule, "[a] judicially noticed fact must be one notsubject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)capable of accurate and ready determination by resort to sources whoseaccuracy cannot *Page 8 reasonably be questioned." (Emphasis added.) Evid. R. 201(B). While Evid. R. 201(C) allows a court to take judicial notice whether or not Evid. R. 201(E) provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Finally, Evid. R. 201(F) specifies that "[j]udicial notice may be taken at any stage of the proceeding." The state contends Evid. R. 201 allows this court to take judicial notice of the adjudicative facts found in Raymond I, supra.
 {¶ 16} Although an appellate court's ability to take judicial notice is not unbridled, the Supreme Court of Ohio has held that appellate courts may take judicial notice of findings in other Ohio cases. SeeMorgan v. Cincinnati (1986), 25 Ohio St.3d 285, 287-288. See, also,In re Adoption of Lassiter (1995), 101 Ohio App.3d 367, 374; Szerlip v.Szerlip, Knox App. No. 01CA09, 2002-Ohio-2541 (concluding that, in temporarily suspending appellant's parental rights, the court could take judicial notice of appellant's conviction in another case). Cf.State v. Velez (1991), 72 Ohio App.3d 836 (holding the trial court erred in taking judicial notice of the fact that a prior judgment entry was for a conviction of drug trafficking where the judgment entry recited only a plea of guilty to enumerated counts of an indictment but did not indicate the conviction was for a drug abuse offense and lacked other evidence that identified the conviction offenses). Even so, the "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot *Page 9 
reasonably] be questioned." Squire v. Geer, 117 Ohio St.3d 506,2008-Ohio-1432, at ¶ 12, certiorari denied, 129 S.Ct. 421.
 {¶ 17} The "fact" at issue here is whether defendant has a 1979 conviction for an offense of violence; the question is whether it is "not subject to reasonable dispute" under Evid. R. 201. SeeSquire, supra (concluding a report pertaining to election matters that was prepared as part of a project the secretary of state initiated did not contain facts that are not "subject to reasonable dispute"). Defendant undisputedly challenges the "fact" at issue, but the issue resolves to whether it is subject to "reasonable" dispute in light of this court's findings in Raymond I, coupled with the admitted evidence in this case.
 {¶ 18} In the trial of defendant's 2007 indictment, Rita Schmidt's testimony and State's Exhibits 18 and 19 establish that this defendant, Jack Raymond, was arrested and indicted for a robbery of a Stop-N-Go in Franklin County on January 8, 1979 in case No. 79CR-01-72B; the same facts are referenced in this court's decision in Raymond I. Although the 1979 entry admitted during the trial in this case cannot be used to prove defendant's 1979 conviction because the document does not comply with Crim. R. 32(C), Raymond I expressly notes that Jack Raymond's 1979 conviction was in case No. 79CR-01-72B, the same case number identifying the indictment admitted as State's Exhibit 18 in this case.
 {¶ 19} As a result, we are presented with a direct and substantial connection between the defendant's 1979 arrest and indictment, which were proven in this case, and his resulting conviction in 1979 for those offenses, as noted in this court's opinion in Raymond I. As this court stated in Raymond I, "there simply is no other reasonable conclusion but that defendant was the Jack Raymond who pled guilty to robbery on *Page 10 
March 26, 1979, and was sentenced to imprisonment on March 27, 1979, and subsequently paroled. Accordingly, there is no merit to the assignment of error."
 {¶ 20} While we are aware this court has been reluctant, due largely to due process concerns, to take judicial notice of facts at the appellate level of proceedings, for several reasons we nonetheless are compelled in the somewhat unique circumstances of this case to take judicial notice of our own opinion in Raymond I. Initially, the state raised the issue in its response to defendant's appellate brief. As a result, defendant, who filed a reply brief, had the opportunity to explain why the fact at issue was subject to reasonable dispute. Defendant, however, summarily dismissed the state's suggestion without setting forth reasons for not taking judicial notice of Raymond I.
Secondly, the evidence in this case, combined with this court's opinion in Raymond I, leaves at best little room for disputing the fact at issue here, an observation that likely explains defendant's failure to respond to the state's request that we take judicial notice of the adjudicative facts in Raymond I. Finally, as Evid. R. 201(E) provides, "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice. * * * In the absence of prior notification, the request may be made after judicial notice has been taken." Should defendant perceive an avenue to dispute the fact at issue that we have not recognized, defendant may file a supplemental brief to address it.
 {¶ 21} Based on the evidence presented in the trial court, as well as the matters set forth in Raymond I, of which we take judicial notice, defendant's first assignment of error is unpersuasive. Because, with judicial notice taken, the evidence is sufficient to establish defendant's 1979 conviction for an offense of violence, we overrule defendant's first assignment of error. *Page 11 
II. Second Assignment of Error {¶ 22} Defendant's second assignment of error contends his conviction is against the manifest weight of the evidence. Defendant focuses his assignment of error on the issue of identity and relies heavily on his alibi witnesses. According to the alibi filed in the trial court, defendant's father transported defendant on Monday, May 28, 2007 at 2:00 p.m. to 2094 Cornell Street for a family Memorial Day cookout, and defendant stayed there until 8:00 p.m. With him were his father, Lisa Straughter, Lori Collins, Jennifer Watts, and Lois Spurlock.
 {¶ 23} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.Conley, supra; Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 24} According to the state's evidence, John Ross, a sales manager for a local Chevrolet dealership, was en route to Whitehall at about 4:00 p.m. on May 28, 2007 to explore a possible employment opportunity. As he was stopped at a traffic light at Main *Page 12 
Street and Weyant Avenue, two men simultaneously opened the right front and back doors of his vehicle and got into the car. The men ordered Ross to drive per their instructions, and Ross eventually arrived at an alley behind a house where they forced Ross out of the car and into the house.
 {¶ 25} Defendant, who had entered the front passenger compartment of the vehicle, ordered Ross to lay face down on the floor and empty his pockets. Defendant and his accomplice took Ross' money, cell phone, and wallet. Emptying the wallet, defendant wanted to know how he could get money from the credit cards. Ross explained he did not have a personal identification number with his credit cards, so defendant told Ross to call the number on the back of the credit card. When the answering machine stated the office was closed due to holiday hours, defendant became frustrated. Apparently sensing defendant's frustration, Ross told him, "I, you know, I have a ten-year old little girl that I need to see. I'll do whatever you need to get you money. I have to see her again." (Tr. 121.) Defendant put a gun to Ross' head and told him that if he did not cooperate and give defendant the money, Ross' daughter would grow up without a dad like defendant did.
 {¶ 26} Ross then explained that he had a blue card with a personal identification number. He gave it to defendant who turned it over to a woman, telling her to get money; defendant asked Ross if defendant could get $500 with the card, and Ross replied affirmatively. When the woman returned, she gave defendant $200. Defendant asked where the rest of the money was, and she explained she thought the remainder was her "cut." (Tr. 123.) On defendant's demand, she gave him another $200 and the receipt. Ross explained he could access additional funds, but would have to go with defendant. At *Page 13 
approximately 5:00 p.m., defendant and his accomplices released Ross into the alley behind the house, along with his car and car keys. Ross phoned a friend who served as a sergeant for the Whitehall Police Department, which prompted a call to Columbus police.
 {¶ 27} The investigation Columbus police conducted led to a photo array from which Ross identified defendant, stating "[t]hat's the motherfucker right there. I can't believe I'm sitting in my own house looking at this guy." (Tr. 195.) In explaining his identification, Ross stated that the perpetrator was in the front seat with him, giving Ross an opportunity to look at the defendant's face, describe the clothes he wore, and note the distinctive tattoos defendant has on his right forearm. Ross was also able to identify Jennifer Watts as the woman who worked with defendant.
 {¶ 28} In response, defendant relies heavily on alibi testimony that suggested defendant was at a holiday family gathering when the incident occurred. Brent Raymond, defendant's brother, testified defendant was at their mother's home at 2094 Cornell Street at approximately 3:00 to 3:30 p.m. when Brent arrived, and defendant remained there until evening for the family's holiday cookout. Brent, however, admitted on cross-examination that he did not know when defendant left the gathering.
 {¶ 29} Similarly, Lisa Straughter, defendant's younger sister, testified everyone, including defendant, arrived at her mother's home by 4:00 p.m.; defendant and Jennifer Watts came to the party together and left together. On cross-examination, Straughter admitted her father, divorced from her mother, was "out of [their] lives for significant periods of time" when they were growing up. (Tr. 282.) Straughter did not know when defendant left the party, but when she left at 9:00 p.m., defendant was no longer there. Lori Raymond Collins, another younger sister, testified she arrived at her mother's house *Page 14 
a little after 4:00 p.m. and defendant was there; her father and a young woman named Jennifer were with him. Collins left the gathering at 5:30 p.m. and returned a half hour later. She saw defendant at the house both during her initial stay and when she returned.
 {¶ 30} Charged with weighing the credibility of the evidence, the jury apparently concluded Ross was more credible than defendant's alibi witnesses. The record presents a basis for that conclusion. Although none of defendant's alibi witnesses revealed a personal history that might make the jury skeptical of the testimony rendered, the lack of specifics about their brother was apparent. None was aware of what defendant did for a living or how he supported himself; they also were vague about where he might live. In addition, they testified the family party was a loose gathering, allowing people to come and mill around with others present. None could say when defendant left the party. While some stated they were testifying because defendant was at his mother's house on Memorial Day, two testified they were aware defendant had been charged with robbery but did not advise the police that defendant was with them that day.
 {¶ 31} The record also contains evidence that a Columbus police officer stopped Jennifer Watts, whom all testified was at the gathering, at 9:31 p.m. at an intersection a considerable distance from the home of defendant's mother, but near the house where Ross was taken. The jury reasonably could conclude that, had she and defendant been at the party until dark as at least one of defendant's alibi witnesses suggested, Watts would not have been where and when police found her. Moreover, against the vagueness of defendant's alibi witnesses, Ross explained his ability to identify defendant, including the tattoo on defendant's arm that Ross noticed during the Memorial Day abduction and *Page 15 
robbery. While the jury was not compelled to find Ross more credible, the evidence allowed it to so find.
 {¶ 32} In the final analysis, the conflicting evidence does not render the jury's judgment against the manifest weight of the evidence.Raver, supra. Because we cannot say the jury lost its way in resolving the evidentiary conflicts in this record, we overrule defendant's second assignment of error.
 {¶ 33} Having overruled defendant's first and second assignments of error, we affirm the judgment of the trial court.
Judgment affirmed
FRENCH and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1