[Cite as *State v. D.D.F.*, 2014-Ohio-2075.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | **No. 13AP-688** |
| v. | : | (C.P.C. No. 12CR-05-2158) |
| D. D. F., | : | **(REGULAR CALENDAR)** |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 15, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

*Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, D.D.F. ("appellant"), appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of five counts of rape. The rape victim was his stepdaughter, a child less than less than 5 years of age at the time of one of the offenses and less than 13 years of age at the time of the remaining four offenses. The jury found appellant not guilty of similar alleged crimes involving an older stepdaughter. Because we conclude that the verdicts were supported by sufficient evidence and were not impermissibly inconsistent, nor otherwise against the manifest weight of the evidence, we affirm.

{¶ 2} On August 19, 2011, appellant's two stepdaughters were interviewed and examined at the Child Assessment Center of Nationwide Children's Hospital in Columbus

after having reported to their paternal grandmother and their father that appellant had sexually abused them over the course of many years.  A Columbus police detective observed the interviews and thereafter initiated an investigation into the sisters' allegations.  Ultimately, the police referred the matter to the prosecutor and the grand jury returned an indictment charging appellant with nine counts of rape. Counts 1 through 4 alleged that appellant had raped the older sister; Counts 5 though 9 alleged that appellant had raped the younger sister.

{¶ 3}   At trial, the younger sister, who was 13 at the time of trial, testified that, when she was 5 years old, appellant had placed a sock over her eyes and instructed her to suck on his "toe," and that she did so until "something would come out" into her mouth. (Tr. 281.)   She testified that similar behavior occurred "almost every day" over the next several years.  She testified that, when she was older, somewhere between ages 8 and 11, appellant began to touch her with his hand and his private part and instructed her to use her hands to "rub him" by moving her hands up and down. (Tr. 286.)  She further testified that appellant would put baby oil on his hands and on both her front and back private parts and attempt to force his front private part into her body.  She also testified that appellant would try to force his private part into her back area causing blood to come from her "butt."  When asked how often appellant asked her to make the white stuff come out, she responded "all the time" (Tr. 289).  She testified that appellant sometimes had her get under a blanket during the sexual incidents and also used a blanket to wipe himself after the incidents. She stated that she did not tell anyone because she was scared and that appellant had threatened to kill her.

{¶ 4}   On cross-examination, the younger sister admitted that she had stated during her interview at Children's Hospital that she "see[s] stuff" that nobody believes. (Tr. 359.)  She also admitted that previously she had lied at home and at school.  She admitted that she had told lies to child welfare social workers in the hope that she could go live with her father, rather than her mother, who used corporal punishment to discipline her, including striking her with a belt.   She further admitted that she had told appellant that she wanted him to adopt her.

{¶ 5}   The older sister, age 16 at the time of trial, also testified.  She stated that, when she was about 14 years old, appellant gave her pornographic movies to watch and

that he began having sex with her by using baby oil on his penis before inserting it inside her vagina. She testified that this happened every night while her mother was working. She also testified that appellant sometimes told her to rub and play with his penis. She stated that she told no one because she was afraid of appellant. She testified that, although she did not get along well with her younger sister, she had allowed appellant to sexually abuse her because she believed, if she did so, appellant would not abuse her younger sister. She stated that she decided to disclose the abuse after her sister reported being abused.

{¶ 6} On cross-examination, the older sister admitted that she had lied at home and at school and had gotten into fights and other trouble at school. She admitted that, when she was little, she told child protective services social workers that voices had told her what to do, including telling her to lie. She testified that she had told school officials that she had witnessed her younger brother being shot and killed at their house, which was not true. She stated that she had made the statement in an attempt to be removed from her mother's house. She also acknowledged that appellant had done nice things for her, including helping her with her cleaning chores and taking responsibility for things she had done in order that she would avoid punishment from her mother.

{¶ 7} The state called as a witness the nurse who had examined both girls at Children's Hospital. She testified that both physical examinations, including genital examinations, were normal. She testified, however, that her evaluation of the girls' hymens and anuses as normal was not determinative of the question as to whether the girls had been the victims of sexual abuse, including penetration. She stated that examination of a girl's genitals revealed signs of physical abuse in less than five percent of cases involving children who had reported sexual abuse. The nurse further testified that testing of both girls for sexually transmitted diseases returned negative results.

{¶ 8} The state introduced DNA evidence through the testimony of a police forensic biologist. She testified that she had examined samples taken from a blanket and a comforter that had been removed from the girls' home. The blanket had stains which tested presumptively positive for semen. DNA testing of one of these semen stains revealed a mixture of DNA matching the DNA of appellant and appellant's wife (the girls' mother). The other semen stain yielded no DNA. The police laboratory examiner also

tested five presumptive blood stains from the comforter.  One sample produced no DNA results.  After conducting DNA tests of the four remaining blood samples, the examiner concluded that neither of the stepdaughters, nor appellant, nor appellant's wife could be excluded as contributors.

{¶ 9}  The appellant testified and denied ever having sexual contact with either of his stepdaughters.  He testified that he had been estranged from his wife for some time, although he had lived in the same house prior to his arrest and had told her that he wanted a divorce. He testified that he had a good relationship with both girls and that they both enjoyed being with him.  He testified that he "couldn't believe what [he] was hearing" when the police detective first informed him that the girls had reported that appellant had sexually abused them.  (Tr. 489.) He voluntarily provided a DNA sample and testified that he had no prior criminal record.  He acknowledged that three bottles of baby oil were found in the home, including one in the room primarily used by appellant, but denied ever using baby oil for any sexual purpose.   He acknowledged, however, that he had spanked them with a belt and with a paddle.  He admitted on cross-examination that he had obtained an Ohio identification card by using his son's social security number, rather than his own.

{¶ 10} At the close of the trial, the jury found appellant guilty of Counts 5 through 9, which alleged rape of the younger of the two sisters.  It found appellant not guilty of the four counts that alleged rape of the older of the two sisters. The trial court entered judgment sentencing appellant to life in prison, with the possibility of parole after 25 years, as to each of the first four counts of rape; and life in prison with possibility of parole after 15 years as to Count 9, with all of the sentences to be served concurrently.  The court also found appellant to be a Tier III sexual offender and sexual predator as to Count 9, pursuant to R.C. 2950.07.

{¶ 11} Appellant appeals from the trial court's judgment, assigning the following two errors for this court's review:

> [1.] THE VERDICT IS INCONSISTENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [2.] THE VERDICT IS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶ 12} We begin by addressing appellant's first assignment of error and reiterate the standards that guide our review of appellant's manifest-weight challenge. In determining a manifest-weight challenge seeking the reversal of a judgment, "the appellate court sits as a 'thirteenth juror.' " *State v. Peters*, 10th Dist. No. 13AP-748, 2014-Ohio-1071, ¶ 8, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The court, " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving the conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.,* quoting *Thompkins* at 387. " 'While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief.' " *Id.,* quoting *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.

{¶ 13} Appellant was convicted of four counts of rape of his younger stepdaughter in violation of R.C. 2907.02. Specifically, Count 9 alleged that appellant had engaged in penis-to-mouth intercourse when the child was less than ten years of age, i.e., when she was five. Count 6 alleged that appellant had engaged in penis-to-mouth intercourse with her when she was ten years of age. Count 8 alleged that appellant had engaged in digital vaginal penetration of the child when she was ten and/or eleven years of age. Count 5 of the indictment charged that appellant had engaged in anal intercourse with the child when she was eleven years of age. Count 7 alleged that appellant had engaged in penis-to-mouth intercourse with the child when she was eleven years of age. All of the counts alleged that appellant had purposely compelled the child to submit by force or threat of force.

{¶ 14} In order to prove appellant guilty of rape of a person less than 13 years of age in violation of R.C. 2907.02(A)(1)(b), the state was required to prove beyond a reasonable doubt that appellant engaged in sexual conduct with his younger stepdaughter, who was then less than 13 years of age. Sexual conduct is defined as

including "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).   The Ohio Jury Instructions define fellatio as a sexual act committed with the penis and the mouth and cunnilingus as a sexual act committed with the mouth and the female sex organ.  *Ohio Jury Instructions*, CR Section 507.02(A)(2) (Rev. Jan. 20, 2007), ¶ 5 and 6.

{¶ 15}  In support of his manifest-weight argument, appellant does not contest that the testimony of the child victim in this case, if believed, establishes all of the elements of rape of a child under age 13.  Moreover, the victim testified that she was 13 at the time of trial and that appellant's sexual conduct began when she was 5 and continued until she stopped living in the same house as appellant after reporting the sexual abuse in August 2013.  Appellant asserts, however, that the fact that the jury convicted him of raping the younger stepdaughter while acquitting him of raping the older daughter renders the verdicts inconsistent and the conviction invalid.

{¶ 16} Appellant acknowledges, however, that, pursuant to well-established law, "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent response to different counts, but only arises out of inconsistent responses to the same count." *State v. Adams*, 53 Ohio St.2d 223 (1978), paragraph two of the syllabus.  That is, the law has long been clear that "[e]ach count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a guilty verdict." *State v. Cardona,* 10th Dist. No. 10AP-1052, 2011-Ohio-4105, ¶ 15, citing *State v. Hicks*, 43 Ohio St.3d 72, 78 (1989), and *State v. Brown*, 12 Ohio St.3d 147 (1984), paragraph one of the syllabus. Appellant argues, however, that his conviction on Counts 5 through 9, while being acquitted of Counts 1 through 4, produced a result that is "inherently inconsistent with Due Process," as the jury found him guilty as to one child and not guilty as to the other child "on the same evidence." (Appellant's Brief, 10.)

{¶ 17} Initially, we reject appellant's premise that the "same evidence" produced fatally inconsistent verdicts, as the testimony given by the younger child as to appellant's conduct with her was clearly separate and distinct from the testimony of the older child. The jury's verdict reflects its acceptance of the younger stepdaughter's testimony as credible.

{¶ 18} Moreover, this court has previously rejected a similar due-process argument. In *State v. Peppers*, 10th Dist. No. 86AP-229 (Aug. 26, 1986), we recognized that the rendering of dissimilar verdicts based purportedly on the same or similar evidence did not deprive the defendant of "Fundamental Fairness within the purview of the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States." *Id.* *See, also*, *State v. Walton,* 8th Dist. No. 90140, 2008-Ohio-3550, ¶ 92-96 (rejecting due-process argument based on alleged inconsistent verdicts where victim testified as to two incidences of rape but jury found the defendant guilty of only one); *State v. Hawkins* 2d Dist. No. 21691, 2007-Ohio-2979, ¶ 25 (quoting *United States v. Powell*, 469 U.S. 57, 66 (1984), for the proposition that, even where an inconsistency might be found, review is unwarranted for "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake"); *State v. Robinson*, 6th Dist. No. L-02-1314, 2005-Ohio-324*,* ¶ 45 *(*Even assuming that inconsistent verdicts have been returned, "[s]uch verdicts do not violate due process.").

{¶ 19} After reviewing the evidence presented at trial, we do not conclude that the jury clearly lost its way in believing the testimony of appellant's younger stepdaughter. As we observed in another case involving a sexual offense, "[w]hile it is conceivable that a different trier of fact may have accepted the defense's theory at trial and reached a different conclusion, we cannot say there is anything so inherently suspect about [the victim's] credibility that a reasonable juror could not find her testimony to be credible." *Cardona* at ¶ 25. Appellant's own credibility was impeached by the state, and this is not an exceptional case in which the evidence weighs heavily against the conviction. Accordingly, we conclude that appellant's rape convictions were not against the manifest weight of the evidence.

{¶ 20} We therefore overrule appellant's first assignment of error challenging the conviction as against the manifest weight of the evidence.

{¶ 21} Turning to appellant's second assignment of error, we observe that " '[s]ufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict.' " *Peters* at ¶ 7, quoting *Cassell* at ¶ 36, citing *Thompkins* at 386. The question of whether evidence is legally sufficient presents an issue of law, not fact. *Peters* at ¶ 7. "In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.,* quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds as recognized in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997). As this court has previously recognized in a case involving a conviction of rape of a child under the age of 13, "[t]he weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact." *State v. Conkel*, 10th Dist. No. 08AP-845, 2009-Ohio-2852, ¶ 12, citing *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 22} Appellant contends that the testimony given by both of the alleged victims was plagued with inconsistencies. He observes that both girls had admitted to lying and did not reveal sexual abuse until August 2011, even though they daily came into contact with teachers and professionals to whom they could have reported appellant's conduct. He characterizes the victim's testimony as "tenuous and incredible." (Appellant's Brief, 15.) However, it was the jury's duty to weigh the credibility of the contradictory testimony and that testimony itself was sufficient to demonstrate the elements of the crime of rape. *Accord Conkel* at ¶ 18 ("The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, in determining the witnesses' credibility."). Therefore, we will not disturb the jury's verdict in this case in view of the victim's testimony.

{¶ 23} Construing the evidence in a light most favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable doubt, based on the younger stepdaughter's testimony, that appellant engaged in the sexual conduct alleged in

Counts 5 through 9 of the indictment. Therefore, we conclude that the evidence was sufficient to support appellant's conviction for those counts of rape. *Accord Conkel* at ¶ 14 (child's in-court testimony is sufficient for a rational trier of fact to have found that appellant engaged in sexual conduct with the child, citing *State v. Ruhlman*, 12th Dist. No. CA2005-05-125, 2006-Ohio-2137, ¶ 26, for the proposition that the testimony of a victim as to the elements of sexual assault, if believed, is sufficient to establish the essential elements of the offense).

{¶ 24} We therefore overrule appellant's second assignment of error.

{¶ 25} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and O'GRADY, JJ., concur.

_____