[Cite as *State v. Watkins*, 2016-Ohio-1029.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

       Plaintiff-Appellee,                    :               No. 14AP-807
                                       (C.P.C. No. 13CR-3600)

v.                                                 :

                                      (REGULAR CALENDAR)

Eric K. Watkins,                                   :

       Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on March 15, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Clark Law Office*, and *Toki Michelle Clark*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Eric K. Watkins, appeals the September 12, 2014 judgment of the Franklin County Court of Common Pleas convicting him and imposing sentence. For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} Late in the evening of June 28, 2013, Daryl Richardson, Rachelle Johnson, Kim Eshenbaugh, and Kevin Chatary met for a drink at a bar in Columbus, Ohio. Around 2:00 a.m. on June 29, 2013, the group left the bar and went to their cars which were parked in an outlying portion of a nearby parking lot. While in the parking lot, Johnson asked Richardson to pick up a piece of wood and put it in the trunk of her car. According to Richardson, as he finished placing the wood in the car, he heard someone say: "[B]reak

yourself, nigga," and felt a hand on his pocket.  (Tr. Vol. I, 50.)  Richardson turned around and observed a man, whom he identified at trial as appellant, holding a shotgun. Richardson described the man as having a "rough" clipper cut and wearing cargo shorts and a shirt with white, black, and gray stripes.  (Tr. Vol. I, 60.)  Richardson also noted the man's clothing was very similar to his own.  Despite Richardson's protests, appellant searched Richardson's pockets, taking his wallet and phone.  Appellant shoved Richardson and ordered him and Chatary to climb into the trunk of the car, which they did.

{¶ 3}  According to Johnson, she was standing in the parking lot talking with Eshenbaugh when a man approached her from behind, called her a "[b]itch," and told her to give him "everything you have."  (Tr. Vol. II, 129.)  She initially thought it was a joke, until she turned around and saw a man she did not know pointing a shotgun at her.  She also observed two men searching Richardson and Chatary's pockets.  Johnson described the man with the shotgun as wearing a white striped shirt and cargo shorts, which was very similar to what Richardson was wearing that evening.  While Richardson and Chatary were in the trunk, the man with the shotgun forced Johnson and Eshenbaugh onto the ground and took Eshenbaugh's possessions, including a purse and jewelry.  At trial, Johnson identified the man with the shotgun as appellant.  While she was on the ground, Johnson saw headlights and, believing the robbers had left, stood up and released Richardson and Chatary from the trunk.

{¶ 4}  Eshenbaugh testified that when she was in the parking lot, she heard a voice from behind her telling her to give him her possessions.  When she turned around, she saw a barrel of a shotgun pointing at her face and heard Chatary and Richardson being searched and placed in the trunk.  Eshenbaugh saw two other men in the area, one of whom approached her and took her purse and jewelry.  While one man took her purse and jewelry, the man with the shotgun, whom she identified at trial as appellant, ordered her and Johnson to lie on the ground.  Eshenbaugh described the man with the shotgun as a black male with a messy haircut, who was wearing shorts, tennis shoes, and a shirt that appeared to be made of a "T-shirt type material."  (Tr. Vol. II, 263.)  While on the ground, she saw headlights coming from where the man with the shotgun had been standing, but did not see anyone get into a car.

{¶ 5}   Chatary testified that while he was in the parking lot, he saw from his peripheral vision a shotgun barrel on his left side.  He put his hands in the air and lowered his head. Then, a man frisked him taking his wallet and phone.  Because Chatary only saw the hands of the man who frisked him, he could not identify the perpetrator of the robbery.

{¶ 6}   The group then ran back to the bar and told the bartender they had been robbed.  When police arrived, Richardson, Johnson, and Eshenbaugh provided police with a description of the robber.

{¶ 7}   Officer Samuel Moore of the Columbus Police Department testified that he reported to the scene of the robbery.  The victims described the robber they remembered most as a "male black that was about five-foot-ten to six foot weighing anywhere between 190 and 210 pounds * * * wearing a horizontal striped shirt."  (Tr. Vol. II, 345.) Officer Moore immediately reported that information on his police radio and began separating the victims.  Within minutes of providing the description, Officer Moore received a report that an individual matching the suspect's description was being detained at an apartment complex directly south of the bar.  Officer Moore separately transported three of the four victims to where the individual was being detained.  Approximately one hour after the robbery, police informed the victims that they had identified a possible suspect.  Once there, he stopped approximately 30 to 40 feet away from the detained individual, whom he identified as appellant, and pointed his spotlight at him.  Each of the three victims separately identified appellant as the robber.

{¶ 8}   Deputy David Coburn of the Franklin County Sheriff's Office testified that he was on patrol near the bar where the victims were robbed when he received a call to be on the lookout for a robbery suspect coming from the bar.  The call identified the suspect as a black male wearing a striped shirt.  Shortly thereafter, Deputy Coburn observed a man, whom he identified as appellant, matching the description of the robbery suspect outside a building in an apartment complex that was in close proximity to the bar. Deputy Coburn performed a protective search of appellant, but did not find anything.  Deputy Coburn was present when the victims identified appellant as the perpetrator of the robbery.

{¶ 9}  Rhonda Miller, appellant's fiancée, testified that on the night in question, appellant was with her in a neighbor's apartment.  Around 2:30 a.m., appellant left the apartment to retrieve an item and did not return.  She later learned that he was being detained in the parking lot of the apartment complex.

{¶ 10} Trekessa Ewing testified that she is Miller's best friend and that appellant and Miller were in her apartment on the night in question.  According to Ewing, appellant left the apartment around 2:30 or 3:00 a.m.

{¶ 11} On July 8, 2013, a Franklin County Grand Jury indicted appellant, charging him with a total of 17 criminal counts: 4 counts of aggravated robbery, in violation of R.C. 2911.01, all felonies of the first degree; 8 counts of robbery, in violation of R.C. 2911.02, four felonies of the second degree and four felonies of the third degree; 4 counts of kidnapping, in violation of R.C. 2905.01, all felonies of the first degree; and 1 count of having a weapon while under disability, in violation of R.C. 2923.13, a felony of the third degree.  All counts contained a firearm specification.

{¶ 12} On May 5, 2014, the case proceeded to trial before a jury.  Appellant waived his right to trial by jury on the having a weapon while under disability count.  At the close of plaintiff-appellee, State of Ohio's, case, the parties stipulated to the admission of judgment entries reflecting appellant's prior convictions.  On May 9, 2014, the trial court declared a mistrial after the jury indicated that it was unable to reach a verdict on any of the tried offenses.  On May 14, 2014, the trial court found appellant guilty of having a weapon while under disability count.

{¶ 13} On September 11, 2014, appellant entered a plea of guilty to obstructing justice, in violation of R.C. 2921.32, a felony of the third degree, as a stipulated lesser-included offense of one of the counts of aggravated robbery.  A nolle prosequi was entered as to all counts of the indictment other than the having a weapon while under disability count.  On the same day, the trial court held a sentencing hearing, imposing an aggregate sentence of three years.  On September 12, 2014, the trial court filed a judgment entry reflecting appellant's conviction and sentence.

## II.  Assignments of Error

{¶ 14} Appellant appeals and assigns the following four assignments of error for our review:

[I.] THE VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

[II.] THE CONVICTION OF APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[III.] THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S MOTION FOR ACQUITTAL.

[IV.] THE WEAPON UNDER DISABILITY LAW, OHIO REVISED CODE SECTION 2923.13, UNCONSTITU-TIONALLY INFRINGES ON THE RIGHT TO REMAIN SILENT.

As appellant's first, second, and third assignments of error are interrelated, we shall discuss them together.

## III.  Discussion

### A.  First, Second, and Third Assignments of Error

{¶ 15}  In his first, second, and third assignments of error, appellant asserts that his conviction for having a weapon while under disability was supported by insufficient evidence and against the manifest weight of the evidence.

{¶ 16}  Sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.*

{¶ 17}  "A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Lytle*, 10th Dist. No. 13AP-866, 2015-Ohio-1133, ¶ 26, citing *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11.  "In determining whether the trial court erred in denying a defendant's Crim.R. 29 motion for acquittal, we apply the same standard used to address

a sufficiency of the evidence attack upon the final judgment of conviction."  *Id.*, citing *State v. Ferguson*, 10th Dist. No. 12AP-1003, 2013-Ohio-4798, ¶ 47.

{¶ 18} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. *See also Thompkins* at 387 ("Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.").  An appellate court must review the entire record, weighing the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 19} "[A] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Spires*, 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 18, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.  The trier of fact is free to believe or disbelieve any or all of the testimony.  *Id.*, citing *State v. Jackson*, 10th Dist. No. 01AP-973, 2002-Ohio-1257.  Thus, although an appellate court acts as a "thirteenth juror" in considering the weight of the evidence, it must give great deference to the fact finder's determination of witness credibility.  *Id.*, citing *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 22.

{¶ 20} As relevant here, R.C. 2923.13(A)(2) provides: "Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * The person is under indictment for or has been convicted of any felony offense of violence."

{¶ 21} First, appellant asserts that his convictions were based on insufficient evidence and were against the manifest weight of the evidence because he has facial tattoos and the victims did not state that the man who robbed them had such tattoos when providing their descriptions of the suspect to police. Thus, appellant essentially contests his identification.

{¶ 22} "The identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. Mickens*, 10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 18, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, and *State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082. "A witness need not be free from doubt when identifying the perpetrator of a crime." *State v. Cameron*, 10th Dist. No. 10AP-240, 2010-Ohio-6042, ¶ 31, citing *State v. Canady*, 10th Dist. No. 89AP-715 (Feb. 5, 1991). "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence." *Reed* at ¶ 48. *See also Mickens* at ¶ 18; *Cameron* at ¶ 31.

{¶ 23} Richardson testified that it was very dark in the parking lot where the incident occurred, and that there was no direct lighting. In the courtroom at trial, Richardson was unable to tell whether appellant had tattoos on his face, stating that "I can't really tell. * * * I can see variations in skin pigment, but that could just be variations in skin pigment. * * * Depends on how his face is turned." (Tr. Vol. I, 69.) Richardson stated that he did not see facial tattoos on the man who robbed him as it was happening, but noted that he would have reported any tattoos to police if he had observed them. When asked on cross-examination whether he would have been able to see the tattoos when he turned around to face the robber, Richardson stated: "Not in the darkness of that parking lot, no." (Tr. Vol. I, 88.) Richardson stated that he made the identification of appellant as the robber with the shotgun based primarily on his hair, clothing, "[a]nd the fact that the person in the dark looked identical to the person that was in the dark with me with a shotgun * * *. So the same markings that they had in the dark looked the same in the dark later on that evening." (Tr. Vol. I, 90.)

{¶ 24} Johnson stated that she was "absolutely sure" that appellant was the robber with the shotgun. (Tr. Vol. II, 141.) She based her identification on his clothing and face, although she could not see his face "in detail" when she identified him on the night of the

robbery.  (Tr. Vol. II, 141.)  Johnson also stated that she was only able to see the tattoos on appellant's face when they were brought to her attention, but that she did not notice them before, thinking they were "like discoloration of his face maybe, like a birth mark." (Tr. Vol. II, 145.)  Johnson stated that she would not have been able to see appellant's tattoos in the parking lot on the night of the robbery because it was too dark.  Eshenbaugh also identified appellant as the man with the shotgun, and stated that on the night of the robbery it "looked like he had facial hair because it was dark." (Tr. Vol. II, 263.)

{¶ 25} Although none of the witnesses described the robber with the shotgun as having tattoos similar to those of appellant, the witnesses stated that it was very dark at the time of the robbery and gave generally consistent descriptions of the robber's clothing. All three witnesses independently identified appellant as the robber with the shotgun both on the night of the robbery and at trial.  Further, circumstantial evidence provides support for appellant's identification, including the proximity of the location where appellant was detained to the area in which the incident occurred, and the brief amount of time between the report of the robbery and appellant's detention.

{¶ 26} Viewing the above evidence in a light most favorable to the state, we find that a rational trier of fact could have found that the identity of the perpetrator was established beyond a reasonable doubt. *Jenks* at paragraph two of the syllabus; *State v. Williams*, 10th Dist. No. 14AP-546, 2015-Ohio-1136, ¶ 27, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (noting that when examining the sufficiency of the evidence, appellate courts "do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction").  Therefore, appellant's contention that his conviction was based on insufficient evidence is without merit.

{¶ 27} We next consider whether appellant's conviction was against the manifest weight of the evidence.  Appellant supports this contention by reiterating his arguments regarding the victims' failure to identify his tattoos when providing a description of the shotgun-wielding robber to police.  Here, the trier of fact was in the best position to weigh the evidence offered at trial in finding the victims' identification testimony to be credible, and such determination is entitled to great deference from a reviewing court. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 37.  Considering the totality of the

evidence, including all reasonable inferences and weighing the credibility of the witnesses, we conclude that it was reasonable for the trier of fact to conclude that appellant was the man wielding the shotgun on the night of the robbery. *See Reed* at ¶ 49; *Cameron* at ¶ 31; *State v. Wilcox*, 10th Dist. No. 05AP-972, 2006-Ohio-6777, ¶ 39 (finding that it was reasonable for trier of fact to find that the defendant was the assailant where the witnesses' "identifications varied in certainty, and their testimonies regarding what defendant was wearing and/or carrying were not entirely consistent"); *State v. Brown*, 10th Dist. No. 07AP-244, 2007-Ohio-6542, ¶ 21 (finding that witness's conflicting testimony regarding the identity of her assailant was an issue of weight and credibility for the trier of fact and did not render the appellant's conviction against the manifest weight of the evidence).

{¶ 28} In addition to reiterating his claims with regard to failure of the victims to identify appellant's tattoos, appellant also claims that his convictions were against the manifest weight of the evidence because he was not in possession of a firearm when he was detained, and two alibi witnesses testified that appellant was with them at the time of the incident. With regard to appellant's alibis, the trial court, in its role as trier of fact, was free to find the state's witnesses to be more credible than appellant's alibi witnesses. At trial, Miller was identified as appellant's fiancée and Ewing was identified as Miller's best friend. Thus, the trial court could reasonably have concluded that the state's witnesses were more credible than those of appellant. *See State v. Raymond*, 10th Dist. No. 08AP-78, 2008-Ohio-6814, ¶ 31; *State v. Draper*, 10th Dist. No. 01AP-237 (Dec. 20, 2001) (finding that credibility determinations with regard to alibi witness testimony were properly resolved by the finder of fact).

{¶ 29} Furthermore, although appellant was not in possession of a shotgun or items taken from the victims at the time of his detention, such evidence does not render his conviction against the manifest weight of the evidence. "In order to 'have' a firearm under R.C. 2923.13, one must either actually or constructively possess the firearm." *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 121, citing *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 32. *See also State v. Banks*, 10th Dist. No. 11AP-592, 2012-Ohio-1420, ¶ 6 ("Possession may be actual or constructive."); *State v. Brooks*, 9th Dist. No. 23236, 2007-Ohio-506, ¶ 23. " 'Constructive possession exists when an

individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' " *Dorsey* at ¶ 32, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976), certiorari denied, 429 U.S. 932. "The State may prove dominion and control solely through circumstantial evidence." *Brooks* at ¶ 24. *See Jenks* at 272.

{¶ 30} Here, Richardson, Johnson, and Eshenbaugh testified that appellant had a shotgun in his possession when he robbed them. Additionally, circumstantial evidence supports a finding that appellant possessed a firearm. Appellant was detained shortly after the robbery in an area in close proximity to where the robbery occurred. Considering the testimony of the witnesses and other evidence, it was reasonable for the trier of fact to find that appellant possessed a firearm for purposes of R.C. 2923.13. *State v. Clay*, 9th Dist. No. 27015, 2014-Ohio-3806, ¶ 21-27 (finding that the defendant's conviction for having a weapon while under disability was not against the manifest weight of the evidence because witnesses identified appellant as possessing a firearm and circumstantial evidence supported the conviction, although no firearm was found in the defendant's possession); *State v. Hunter*, 10th Dist. No. 14AP-163, 2014-Ohio-4649, ¶ 22--28 (finding that the defendant's conviction for having a weapon under disability was not against the manifest weight of the evidence and was supported by sufficient evidence although the defendant did not possess a firearm at the time of his arrest). *See also Brooks* at ¶ 26 ("[C]ircumstantial evidence may be used to infer that a defendant charged with carrying a concealed weapon constructively possessed a concealed weapon even though the weapon was not found on the defendant."). Therefore, we cannot find that, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.

{¶ 31} Appellant also argues that the trial court's verdict on the count of having a weapon while under disability was inconsistent with the jury's inability to reach a verdict on the other counts of the indictment. As appellant raised no objection, constitutional or otherwise, when the trial court announced its guilty verdict, he has waived all but plain error. Crim.R. 52(B). "A party claiming plain error must show that the outcome of the proceeding would have been different absent the alleged error." *State v. Webb*, 10th Dist.

No. 10AP-289, 2010-Ohio-6122, ¶ 56, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 17. "The burden of demonstrating plain error is on the party asserting it." *Payne* at ¶ 17.

{¶ 32} It is important to note that the jury did not acquit appellant of the other offenses with which he was charged, but, instead, was unable to reach a verdict. Thus, appellant's conviction for having a weapon while under disability cannot be inconsistent with any findings by the jury since their failure to reach a verdict is a "nonevent." *Yeager v. United States*, 557 U.S. 110, 120 (2009). *See Richardson v. United States*, 468 U.S. 317, 325 (1984) (holding that "the failure of the jury to reach a verdict is not an event which terminates jeopardy"); *State v. Lovejoy*, 79 Ohio St.3d 440, 445 (1997). "[H]ung counts have never been accorded respect as a matter of law or history, and are not similar to jury verdicts in any relevant sense." *Yeager* at 124. "[T]he fact that a jury hangs is evidence of nothing--other than, of course, that it has failed to decide anything." *Id.* at 125.

{¶ 33} However, even if we were to consider that the trial court's guilty verdict on the having a weapon while under disability count was inconsistent with the jury's inability to reach a verdict on the other counts, any inconsistency in the outcome of these separate counts does not invalidate appellant's conviction. *Webb* at ¶ 59; *State v. D.D.F.*, 10th Dist. No. 13AP-688, 2014-Ohio-2075, ¶ 16; *State v. Cardona*, 10th Dist. No. 10AP-1052, 2011-Ohio-4105, ¶ 15. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *Lovejoy* at paragraph one of the syllabus. Furthermore, "[w]hen a jury finds a defendant not guilty as to some counts and is hung on other counts, double jeopardy and collateral estoppel do not apply where the inconsistency in the responses arises out of inconsistent responses to different counts, not out of inconsistent responses to the same count." *Id.* at paragraph two of the syllabus.

{¶ 34} Thus, the jury's inability to reach a verdict on the other counts of the indictment is not inconsistent with the finding of guilt on the count of having a weapon while under disability. *See Webb* at ¶ 62 (finding that "as there was sufficient evidence to sustain [the] appellant's having weapons while under disability conviction, [the] appellant was not prejudiced by the jury's inability to reach a verdict on the improper handling

count").  *See also State v. Smith*, 10th Dist. No. 14AP-33, 2014-Ohio-5443, ¶ 27 (finding meritless the "appellant's contention that the jury verdicts of acquittal precluded his conviction for having a weapon while under disability").  Therefore, we find appellant's contention to be without merit.

{¶ 35} Finally, appellant argues that the absence of the presiding judge and the substitution of a different judge during a portion of the jury's deliberations affected appellant's conviction for having a weapon while under disability charge.  First, appellant fails to demonstrate how this argument relates to a challenge to the manifest weight of the evidence or sufficiency of the evidence.  Second, the same judge who presided over the presentation of all evidence introduced at trial also found appellant guilty of the having  a weapon while under disability charge, whereas the substitute judge was present for only a portion of the jury's deliberations.  Third, appellant was notified of the substitution and raised no objection.  As a result, we find that appellant has forfeited any claim to error as it relates to the substitution of a judge.  Therefore, we decline to further consider such argument.

{¶ 36} Accordingly, we overrule appellant's first, second, and third assignments of error.

### B.  Fourth Assignment of Error

{¶ 37} In his fourth assignment of error, appellant asserts that R.C. 2923.13 unconstitutionally infringes on the right to remain silent.  However, the record reflects that appellant failed to raise this argument before the trial court.

{¶ 38} "It is a well-established rule that ' "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." ' "  *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.  "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court."  *Awan* at 122.  As appellant failed to object in the trial court, we find that appellant forfeited his constitutional challenges to R.C. 2923.13 and has, therefore, waived all but plain error. Crim.R. 52(B).  However,

appellant fails to demonstrate how his argument satisfies the standard for plain error and, as a result, we decline to further consider this issue. *Payne* at ¶ 17. Accordingly, we overrule appellant's fourth assignment of error.

## IV. Conclusion

{¶ 39} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and HORTON, JJ., concur.

————————