OPINION
{¶ 1} Defendant-appellant, Nelson Mickens ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas entered upon a jury verdict finding appellant guilty of one count of rape, in violation of R.C. 2907.02.
 {¶ 2} On June 26, 2007, the Franklin County Grand Jury indicted appellant on two counts of rape. Appellant pleaded not guilty and a jury trial commenced on April 8, *Page 2 
2008. The following facts were adduced at the trial. The victim was an exotic dancer who, on June 26, 2007, was working the afternoon shift at the Doll House strip club on the north side of Columbus. A customer claiming to be a physician offered her money if she would leave the club and have some drinks with him. He promised her $100 to leave the club with him (which was prohibited by her employer), another $100 to get in his car, and another $100 to have drinks, though he may have promised that this last installment would be more than $100.
 {¶ 3} She agreed to do these things. However, she told the man that she absolutely would not have sex with him because she had her menstrual period at that time. As proof, she showed the man her tampon string. He replied, "That's fine, that's fine. I don't want to have any sex. You're a beautiful girl. I want you to come out with me." (Tr. 25.) The two met at a gas station behind the club. The man, who was driving a gold-colored SUV, took the victim to a bar on Bethel Road.
 {¶ 4} The two flirted with each other and the man was "touchy feely" with the victim while the two were at the bar on Bethel Road. After her first or second drink, the victim asked to be taken home, whereupon the two left the bar. She asked the man for her money. He told her not to worry about it and that she would get her money. On the way to her apartment, the man asked the victim for oral sex. According to the victim, she refused. At this point, she testified, the man stopped at a bus stop near her apartment, and he told her he was a police officer. He showed her an envelope full of money, said she could either take the money and he would arrest her for prostitution or solicitation, or she could give him oral sex. The man saw the victim's driver's license on the console and told her, "I got your name, and I know where you live." (Tr. 90.) *Page 3 
 {¶ 5} Then, she testified, he grabbed her by the neck and threw her into the back seat of his car. She reminded him about her menstrual period and asked him, "Please don't do this." (Tr. 38.) The man pushed her shorts and panties aside, vaginally and anally raped her, and then ejaculated on her shorts and stomach. According to the victim, he did not remove any of her clothes. Afterwards, she stated, he cleaned up with some napkins and asked her to leave the car. She grabbed her bag and ran away.
 {¶ 6} When she arrived home after fleeing her assailant's vehicle, the victim called the police. Later, she went to Riverside Methodist Hospital ("Riverside") where nurse Michelle Harrell ("Harrell") examined her. Harrell testified that there was a bruise on the victim's neck, which the victim reported as being new. Harrell found no injuries to the victim's vagina or anus, but stated that the absence of such injuries was not inconsistent with the victim's statements. Harrell collected swabs from the victim's vagina, anus, mouth, ear, hand, and abdomen. She also removed the victim's tampon and retained it and the victim's clothing for analysis. Debra Lambourne ("Lambourne") of the Columbus Police Department's Crime Lab testified that semen found on the string of the victim's tampon contained appellant's DNA. None of the other swabs contained DNA, nor did the victim's clothing.
 {¶ 7} Early on the morning of June 27, 2007, Detectives Kenneth Lawson ("Lawson") and Amy Welsh ("Welsh") of the Columbus Police Department responded to a call to Riverside in order to interview the victim. However, they were unable to conduct a thorough interview at that time because the victim was very upset.
 {¶ 8} On July 2, 2007, the victim called Lawson to tell him that she now worked at the Gold Fox strip club and that, while at work on that day, she had seen the man who *Page 4 
raped her. She testified that when she saw her assailant on July 2, 2007, he was wearing the same white shirt, white cap and tan shorts that he was wearing when she first met him at the Doll House.
 {¶ 9} Lawson testified that he followed up by going to the Gold Fox. He testified, without objection, that while at the Gold Fox he spoke with a bouncer who stated that when the victim identified a customer as her attacker, he had followed the man out into the parking lot and had recorded the license plate number of the man's vehicle. The bouncer gave the detective the license plate number. Lawson and Welsh located the owner of the vehicle bearing the license plate recorded by the bouncer.
 {¶ 10} Lawson testified, without objection, that the vehicle owner, Mike Armstrong ("Armstrong") told Lawson that he had lent his gold SUV to appellant. According to Lawson, the use of a special light tool that reveals the presence of bodily fluids revealed that no semen stains were present in the gold SUV. Lawson showed the victim a photo array that included a photograph of Armstrong; she did not identify anyone in that array as her attacker.
 {¶ 11} On July 27, 2007, the victim again called police to say that she was at the Xcalibur Club, where she was dancing at the time, and that her assailant was in the club at that time. He was wearing a white shirt and white cap. The victim also said that she again saw the gold SUV in the parking lot. Patrol officers arrested appellant after the victim pointed him out and stated that he was "definitely" the man who raped her. (Tr. 57.)
 {¶ 12} Neither the bouncer nor the victim identified appellant when Lawson showed them a photo array containing appellant's picture. The victim stated that "It looks *Page 5 
like number two, but he had a hat on, one eye was lazy, and he had smooth skin." (Tr. 248.) Appellant's photograph was not in the number two position in the array. In court, the victim was unable to identify appellant as her assailant. She said that "his skin is a lot lighter." (Tr. 93-94.) She stated that appellant "looks like him." (Tr. 94.) However, she stated that she could not conclusively state that appellant was her attacker.
 {¶ 13} Upon his arrest, appellant denied having committed the alleged assault or having any knowledge of it. At first, he denied having ever been to the Doll House or the Gold Fox, and denied having ever asked a stripper to leave a club with him. Lawson then told appellant (falsely) that surveillance videotapes placed him at the Doll House, the Gold Fox, and the bar on Bethel Road, and that the bouncer at the Gold Fox identified him from a photo array. Upon hearing this, appellant admitted that he took a stripper to a bar on Bethel Road and that he told her that he worked in the "medical field." (Tr. 309.) He also told Lawson that after he and the stripper left the bar on Bethel Road, she performed oral sex on him in his vehicle and that he had ejaculated into napkins. He told Lawson that the woman begged for money afterwards, but he had refused to pay her. He admitted that he saw the woman again at the Gold Fox and that he immediately left the Gold Fox because he "didn't want to go back in there with that issue with her." (Tr. 293.) Crime scene investigators found a magazine in the gold SUV that contained advertisements for area strip clubs.
 {¶ 14} Review of the defense opening statement and closing argument reveals that appellant's defense was based upon consent. He admitted he had oral sex with the victim (though he denied any vaginal or anal sex), but disputed that the sex was nonconsensual. He did not dispute that his DNA was present on her tampon string, but *Page 6 
theorized that it was deposited there when the victim cleaned herself using the same napkins into which he had ejaculated. Appellant argued that the victim's motive for accusing him of rape was that he refused to pay her for the oral sex she gave him, as he had originally promised.
 {¶ 15} Following its deliberations, the jury returned a verdict of guilty on Count 1, which alleged vaginal rape, and not guilty of Count 2, which alleged anal rape. The trial court sentenced appellant to the maximum prison term of ten years. He timely appealed and advances three assignments of error for our review:
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF CONVICTION AND SENTENCE BECAUSE THE IDENTIFICATION OF THE DEFENDANT WAS INSUFFICIENT TO SUSTAIN THE VERDICT.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF CONVICTION AND SENTENCE BECAUSE THE DEFENDANT WAS NOT PROVIDED CONSTITUTIONALLY ADEQUATE ASSISTANCE OF COUNSEL.
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF CONVICTION AND SENTENCE BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} We will address each of appellant's assignments of error in turn. In support of his first assignment of error, appellant argues that his conviction is unsupported by sufficient evidence of his identity as the perpetrator of the rape for which he was convicted. *Page 7 
 {¶ 17} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "[Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law."State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.
 {¶ 18} The identity of a perpetrator may be established by the use of direct or circumstantial evidence. State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046; State v. Reed, 10th Dist. No. 08AP-20,2008-Ohio-6082. "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence." (Citations omitted.) Reed, at ¶ 48. "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." State v.Coleman (Nov. 21, 2000), 10th Dist. No. 99AP-1387, citing Manson v.Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243.
 {¶ 19} Appellant points out that neither the victim nor the bouncer was able to identify appellant in a photo array. He also points out that the victim was unable to identify him in court as being the perpetrator of her rape. While conceding that plaintiff-appellee, State of Ohio ("appellee"), was not required to produce an in-court identification *Page 8 
of him, appellant argues that the circumstantial evidence of identity that appellee produced is insufficient. He states that the circumstantial identity evidence consists of only the following: (1) the bouncer's statement as to the license plate number of the vehicle driven by a patron who the victim had identified as her rapist; (2) Armstrong's statement that he had loaned to appellant the vehicle bearing that license plate number; and (3) appellant's statement that he had picked up a stripper, taken her for drinks to a bar on Bethel Road, and received oral sex from her.
 {¶ 20} Appellant argues that the bouncer's and Armstrong's statements to police, which link appellant to the crime, should not be considered because they were admitted in violation of the prohibition against hearsay found in Evid. R. 802. We note, however, that appellant has not separately assigned as error the admission of this evidence. Appellee points out that the other piece of circumstantial identity evidence in the record was the fact that appellant's DNA was found on the string of the tampon that Harrell collected from the victim's body on the date of the rape. This DNA evidence not only proves that appellant was present with the victim on the date of the rape, but, viewing the evidence in the light most favorable to appellee, reasonable minds could conclude from this evidence alone that appellant had vaginal intercourse with the victim on that date.
 {¶ 21} Upon our review of the evidence adduced, and viewing the same in a light most favorable to appellee, we conclude that the conviction is supported by sufficient identity evidence. Indeed, appellant did not rest any part of his defense on the assertion that the perpetrator was someone other than him. Rather, review of his opening statement, closing argument, and cross-examination of witnesses reveals that his defense consisted solely in the theory that the victim engaged in oral sex consensually *Page 9 
and that no vaginal or anal intercourse took place. The success of this defense depended in large part upon the jury's evaluation of the victim's credibility. "The evaluation of the evidence and the credibility of the witnesses is in the province of the jury and we may not reverse a conviction where the record shows a verdict is based on sufficient evidence." State v. Watson (1991), 61 Ohio St.3d 1, 12, citing DeHass. Here, the testimonial and circumstantial evidence adduced is a sufficient basis for the jury's conclusion that it was appellant who engaged in nonconsensual vaginal intercourse with the victim on the date in question.
 {¶ 22} Having concluded that appellant's conviction was supported by sufficient evidence that it was appellant, and not another individual, who perpetrated the rape, we overrule appellant's first assignment of error.
 {¶ 23} In his second assignment of error, appellant argues that he received ineffective assistance of counsel, in violation of his constitutional rights, because his counsel failed to object to Lawson's hearsay testimony regarding the bouncer's and Armstrong's statements.
 {¶ 24} To prove ineffective assistance of counsel, the defendant must show that counsel's performance was deficient. Strickland v.Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by theSixth Amendment to the United States Constitution. Id. The defendant must then show that counsel's deficient performance prejudiced his defense. Id. The accused must demonstrate a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. Id. at 694. "A reasonable probability is a probability *Page 10 
sufficient to undermine confidence in the outcome." Id. "Prejudice" exists only when counsel's performance renders the result of the trial unreliable or the proceeding unfair. Id.
 {¶ 25} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. Id. at 697.
 {¶ 26} "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A properly licensed attorney is presumed competent, and the burden of proving ineffectiveness is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98, 100. Thus, counsel's actions that "might be considered sound trial strategy" are presumed effective. Strickland, at 689.
 {¶ 27} Appellant argues that his counsel made a serious error in failing to object to Lawson's testimony regarding the bouncer's and Armstrong's statements because the testimony was inadmissible hearsay. He further argues that counsel's failure to object to the testimony was prejudicial because without it there was insufficient evidence linking him to the crime and, therefore, appellee would not have sustained its burden to prove identity. He argues that the result would probably have been different had appellee been unable to explain how its investigation came to center upon appellant.
 {¶ 28} As we noted earlier, appellant's assignments of error do not place before us the issue whether any part of Lawson's testimony constituted inadmissible hearsay. For purposes of his second assignment of error, we will assume, without deciding, that it did. *Page 11 
Even with this assumption, it is clear that appellant's arguments are unavailing upon review of the transcript as a whole. As noted earlier, defense counsel's strategy was never based upon mistaken identity. The defense conceded that appellant visited various Columbus-area strip clubs, that he had been present with the victim on the date in question, and that the two had engaged in sexual activity on that date. Counsel argued to the jury that the sexual activity was consensual, that appellant had not had vaginal or anal intercourse with the victim, and that the victim told the bouncer and the police that appellant had raped her because she was angry at not having been paid for her "services."
 {¶ 29} Counsel's decision not to object to Lawson's testimony is consistent with the theory of the defense case. "`The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" State v. Hale, 119 Ohio St.3d 118,2008-Ohio-3426, ¶ 233, quoting State v. Holloway (1988),38 Ohio St.3d 239, 244. Because "objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the factfinder * * * competent counsel may reasonably hesitate to object in the jury's presence." (Citation omitted.) State v. Campbell, 69 Ohio St.3d 38, 53,1994-Ohio-492. Because counsel's decision not to object to Lawson's testimony can be considered sound trial strategy, counsel is presumed effective. Strickland. Thus, appellant has not satisfied the first prong of the Strickland test. For this reason, we need not consider the second prong. Id. Accordingly, appellant's second assignment of error is overruled.
 {¶ 30} In his third and final assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. In determining whether a *Page 12 
verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See DeHass, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
 {¶ 31} Appellant argues that his conviction is against the manifest weight of the evidence because it was not supported by sufficient evidence of identity, and it was based, in part, on hearsay evidence. We have already discussed these points and find them without merit. Appellant also argues that the conviction is against the manifest weight of the evidence because the victim's testimony contained internal inconsistencies as to such things as whether or not the two stopped at the victim's apartment before going to the Bethel Road bar, whether or not the victim had her cell phone with her on the date in question, whether the victim initially felt comfortable with appellant or felt uneasy about him, and whether the amount he initially offered her was $300 or $500. He further argues that the physical evidence was inconsistent because no semen was found in the swabs of the victim's abdomen or clothing, or in the vehicle; and because semen was found on the victim's tampon string but not on the vaginal, rectal or oral swabs taken from *Page 13 
the victim. Finally, he argues that the absence of any injuries to the victim's genitalia is inconsistent with her allegation of vaginal rape.
 {¶ 32} A criminal defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." State v. Timmons, 10th Dist. No. 04AP-840, 2005-Ohio-3991, ¶ 10. "The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." Id.
 {¶ 33} Upon our thorough review of the testimonial and DNA evidence presented, we conclude that the jury's verdict was not against the manifest weight of the evidence. This is not an exceptional circumstance in which the evidence weighs heavily against the conviction. Accordingly, appellant's third assignment of error is overruled.
 {¶ 34} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
FRENCH, P.J., and KLATT, J., concur. *Page 1