[Cite as *State v. Nevel*, 2024-Ohio-918.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 23 CAA 08 0046 |
| | : | |
| EARLE A. NEVEL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
                             of Common Pleas, Case No. 21 CR I 06
                             0341


JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      March 12, 2024



APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

MELISSA A. SCHIFFEL                      WILLIAM T. CRAMER
DELAWARE COUNTY PROSECUTOR               470 Olde Worthington Rd., Suite 200
                                         Westerville, OH 43082
KATHERYN L. MUNGER
145 North Union St., 3rd Floor
Delaware, OH 43015

*Delaney, P.J.*

{¶1} Defendant-Appellant Earle A. Nevel appeals his conviction by the Delaware County Court of Common Pleas.

### FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2} On June 24, 2021, the Delaware County Grandy Jury indicted Defendant-Appellant Earle A. Nevel on one count of Public Indecency in violation of R.C. 2907.09(B)(4). The charge was a fifth-degree felony based on Nevel's prior conviction for Public Indecency, in violation of R.C. 2907.09(A)(1), by the Massillon Municipal Court in Case No. 2007CRB00315. After entering a not guilty plea to the June 24, 2021 charge, the matter was set for a jury trial.

{¶3} On June 9, 2023, Nevel filed a motion in limine to exclude his prior conviction for Public Indecency by the Massillon Municipal Court in Case No. 2007CRB00315. He argued that his prior conviction was uncounseled without a valid waiver of counsel and therefore could not be used to enhance the penalty for a later conviction. When Nevel entered his guilty plea to the Massillon Municipal Court case, the February 22, 2007 sentencing entry did not reflect that he signed a waiver to the right to counsel before the trial court sentenced him to 30 days in jail. The trial court set the matter for a hearing on June 12, 2023. Via judgment entry filed on June 13, 2023, the trial court denied the motion in limine based on Nevel's failure to meet his burden to make a prima facie showing of unconstitutionality.

**Jury Trial**

{¶4} The matter proceeded to a jury trial starting on June 15, 2023. The following evidence was adduced at trial.

{¶5} On June 16, 2021, thirteen-year-old H.B. and her fourteen-year-old friend, A.R., went to Alum Creek Park, located in Delaware, Ohio. They went to Alum Creek Park to "hammock," which consisted of laying in a hammock tied between two trees and listening to music. H.B. and A.R. set up their hammock near a trail by the Alum Creek Dam. There was a wooded area near their location.

{¶6} While they were hammocking, the two girls noticed a short black man walking nearby. H.B. said the man was wearing only a white Speedo swimming suit. A.R. described the man as wearing a blue thong. The girls saw the man walking in the woods near their location, moving away from their view, and then reappearing where they could see him. He was carrying a water bottle. H.B. saw that he was staring at them and making eye contact with them. The man walked away again and then reappeared in front of the girls, twenty to twenty-five feet away.

{¶7} The girls were listening to music while they were hammocking. H.B. testified that when the man reappeared the third time, he started walking and dancing to their music. The man got closer to a tree and H.B. saw the man start "some sexual movement as in twerking, shaking your butt sexually, grinding up against the tree." (T. 127). At first, the girls thought it was funny. A.R. even took a few Snapchat videos of the man dancing by the tree, which were played for the jury. But as the man continued to dance, the girls got worried.

{¶8} While the man was dancing partially behind a small tree, H.B. testified she saw the man move the leg of his swimming suit to the side and pull out his penis with his hand. He held his penis in his hand and wagged it in an up and down motion. H.B. could not say whether the man's penis was erect or not. A.R. testified the man took his thong off. She saw the man masturbate by moving his hand up and down his erect penis.

{¶9} In a shock of emotions, the girls started talking to each other and then yelling. A.R. said she told the man to back away. The man walked away. The girls were scared, and they walked down a path where they encountered two adult women. After explaining what happened, the women stayed with the girls while A.R. called the police. The 911 call was played for the jury. While they waited for the police, a few teenage boys came by and also waited with the girls to make sure they were okay after they were told what happened. The boys helped the girls gather their belongings.

{¶10} The police arrived and the girls gave them their statement. The girls pointed in the direction where they saw the man walk away.

{¶11} K.A. testified he was one of the teenage boys who arrived on the scene after the incident with the girls. He and his friends stayed with the girls and helped them get their belongings back from the hammock area. As he walked down to the hammock area, K.A. got a quick glance of a slim, black man laying down on a towel or blanket. The man was not wearing a shirt or pants, but his groin area was covered.

{¶12} Deputy Erica Ferrell, Deputy Kisner, and Sergeant Clarke with the Delaware County Sheriff's Office were dispatched to the scene after the 911 call. They got a brief statement from the girls and began looking for the man described by the girls. Deputy Ferrell found a black man laying on a blanket with two umbrellas near the hammock area.

Screenshots from Deputy Ferrell's body cam were shown to the jury, which showed a black man wearing a small white thong laying on a blanket under two umbrellas. She asked for the man's identification, which the man provided, and he was identified as Earle Nevel. Deputy Ferrell did not ask the girls to identify the man because she did not want to make the girls uncomfortable. H.B. and A.R. testified that they were never asked to identify Nevel through a photo lineup. Based on the girls' description of the man, that a man matching their description was immediately located near the hammock area, and that there were no other people in the general vicinity, Deputy Ferrell placed Nevel under arrest.

{¶13} Nevel's prior conviction by the Massillon Municipal Court for Public Indecency was introduced and admitted into evidence as State's Exhibit 24.

{¶14} At the close of the State's case, Nevel moved for an acquittal pursuant to Crim.R. 29. The trial court overruled the motion. The defense then rested.

{¶15} After deliberation, the jury returned a verdict of guilty on the charge of Public Indecency in violation of R.C. 2907.09(B)(4), with a special finding that Nevel had a prior conviction of Public Indecency.

## Sentencing

{¶16} The trial court ordered a presentence investigation and scheduled a sentencing hearing.

{¶17} Via sentencing entry filed July 17, 2023, the trial court found that Nevel was not amenable to community control and imposed a 10-month prison term, with a mandatory five-year term of post release control. Nevel was labeled a Tier I sex offender.

{¶18} It is from this conviction and sentence that Nevel now appeals.

**ASSIGNMENTS OF ERROR**

{¶19} Nevel raises one Assignment of Error:

I. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

**ANALYSIS**

{¶20} In his sole Assignment of Error, Nevel contends his conviction for Public Indecency was not supported by the weight of the evidence.

**Standard of Review**

{¶21} Upon a challenge to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Ashcraft*, 5th Dist. Richland No. 2021-CA-0024, 2023-Ohio-2378, ¶ 14, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997). "Weight of the evidence" addresses the evidence's effect of inducing belief. *Thompkins, supra*, 78 Ohio St.3d at 386-387, 678 N.E.2d 541 (1997); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (quotation marks omitted); *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶ 25, citing *Thompkins*.

{¶22} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury but must find that "'the jury clearly lost its

way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

**Conviction Supported by the Weight of the Evidence**

{¶23} The jury convicted Nevel of Public Indecency in violation of R.C. 2907.09(B)(4). The statute reads:

(B) No person shall knowingly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront another person who is in the person's physical proximity, who is a minor, and who is not the spouse of the offender:

* * *

(4) Expose the person's private parts with the purpose of personal sexual arousal or gratification or to lure the minor into sexual activity.

{¶24} Nevel first argues that his conviction was against the manifest weight of the evidence because there was conflicting evidence about the identity of the alleged perpetrator. The girls gave conflicting testimony as to the color of the thong the man was

wearing. The police arrested Nevel because he was found near the area of the alleged incident and he matched the girls' description; however, the police did not ask the girls to positively identify Nevel as the man they saw on June 16, 2021 after he was in their custody.

{¶25} "The identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. Mickens*, 10th Dist. Franklin No. 08AP-626, 2009-Ohio-1973, 2009 WL 1142271, ¶ 18 citing *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046; *State v. Reed*, 10th Dist. No. 08AP–20, 2008–Ohio–6082. "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence." (Citations omitted.) *Mickens*, 2009-Ohio-1973 at ¶ 18 quoting *Reed*, 2008-Ohio-6082 at ¶ 48. The jury was shown the Snapchat videos A.R. took of the man dancing before he allegedly exposed his penis to the girls. (State's Exhibits 5A-5B). The video shows a black man wearing only a small thong dancing next to a tree. The deputies' body-cam footage and photographs of the man were then shown to the jury. (State's Exhibit 1-3). They show a black man laying on blanket wearing only a small thong. The police officers testified there was no other man in the general vicinity of the hammock area matching the girls' description. Based on the miniscule size of the thong worn by the man and the circumstances under which they observed the thong, we believe the jury could discern the girls' conflicting descriptions of the color of the thong.

{¶26} Nevel next argues the weight of the evidence does not support the claim that Nevel exposed his penis to the girls. He contends the girls' testimony conflicted as to how Nevel exposed and touched his penis. The jury was in the best position to observe

the witnesses and determine their credibility. The girls' testimony was consistent that Nevel exposed and then held his penis in his hand, which H.B. described him as wagging it and A.R. described it as masturbation. The jury found the girls' testimony believable that Nevel exposed and touched his private parts with the purpose of sexual arousal or gratification or to lure the minors into sexual activity. We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶27} Nevel's sole Assignment of Error is overruled.

## CONCLUSION

{¶28} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Wise, J., concur.